IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| C.J., a minor, by and through her next friend and guardian, BETTY JEAN MURPHY JAMES, <br><br> and <br><br> BETTY JEAN MURPHY JAMES, as Administrator of the Estate of Latoya James <br><br>     Plaintiffs, <br><br> v. <br><br> MICHAEL BLAQUIERE, in his individual capacity, as Camden County Deputy Sheriff <br><br> and <br><br> DOWNY CASEY, in his individual capacity, as a Camden County Deputy Sheriff <br><br> and <br><br> JOHN/JANE DOES, in their individual capacities, as Camden County Deputies <br><br>     Defendants. | CIVIL ACTION <br> FILE NO.: 2:22-CV-00078-LGW-BWC |

**DEFENDANTS MICHAEL BLAQUIERE AND DOWNY CASEY'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

    COME NOW Michael Blaquiere and Downy Casey, in their individual capacities, ("Defendants") and pursuant to Federal Rule of Civil Procedure Rule 56 and Local Rule 56.1,

submit their Statement of Undisputed Material Facts in Support of their Motion for Summary Judgment.

1.

On April 29, 2021, Michael Blaquiere, an investigator with the Camden County Sheriff's Office ("CCSO"), applied for a search warrant of the residence located at 12103 US Hwy 17, Woodbine, Georgia 31569 ("the residence"). (Exhibit A, Affidavit and Application for a Search Warrant, p. 1; Exhibit B, Deposition of Michael Blaquiere, 10:23-25.) Downy Casey, also an investigator with CCSO, assisted in the CCSO investigation leading up to Blaquiere's search warrant application. (Exhibit C, Deposition of Downy Casey, 8:3-5; 62:5-8.)

2.

The search warrant application indicated that Varshan Brown was the "primary target of narcotics dealing that is residing at the residence." (Ex. A, p. 1.)

3.

In the investigation leading up to the search warrant application, defendants were made aware through prior surveillance of the home that it was equipped with security cameras and that monitors were inside the house. (Ex. C, 23:6-13.)

4.

As the primary target of the Blaquiere's prospective search warrant, defendants performed a criminal history search of Varshan Brown. As part of their investigation, defendants were made aware of Brown's violent and extensive criminal history prior to the subject incident, including but not limited to prior charges and/or convictions for aggravated assault, battery, multiple charges for possession of a firearm by a convicted felon, trafficking in cocaine, marijuana, methamphetamine, battery/simple battery family violence, purchase, possession, distribution, or

sale of marijuana, willful obstruction of law enforcement, probation violation, aggravated assault on a law enforcement officer, and possession of cocaine. (Ex. C, 70:3-11; Ex. B, 37:3-17, 59-60:-18-4; Exhibit D, Camden County Sheriff's Office Operation Plan, p. 3; Ex. A, p. 2.)

5.

In addition, Casey was personally aware of a prior incident involving Brown where his son was believed to have shot him in the back after Brown had beaten his son's mother. (Ex. C, 88-89:16-9.) Defendants were also made aware, by way of confidential informants, that Brown was known to keep weapons on his person and in the residence. (Ex. C, 70:12-25; Ex. B, 28:10-14.)

6.

When applying for the search warrant, Blaquiere indicated that the search was for the existence of controlled substances including but not limited to cocaine and THC, items used in the distribution and sales of narcotics, and electronic devices used to facilitate transactions in controlled substances. (Ex. A, p. 3.)

7.

Blaquiere also requested the magistrate judge include a "No Knock" provision for the safety of law enforcement based on the aforementioned facts known to him. (Ex. A, p. 2.)

8.

The magistrate judge approved of the search warrant for Brown's residence but did not include the requested "No Knock" provision. (Ex. A, p. 3.)

9.

At approximately 4:00 a.m. on the morning of May 4, 2021, defendants, along with other members of CCSO, convened at the CCSO substation to review the CCSO Drug Task Force

Operation Plan prepared by Blaquiere and Casey for the execution of the search warrant on Brown's residence. (Ex. C, 42-44:11-3; Ex. D.)

10.

Defendants and other members of CCSO arrived at the residence shortly before 5:00 a.m. to execute the search warrant. defendants saw that the porch light was on and also saw a flashing light coming from what they believed to be a security camera located on the front porch—this specific camera was not previously accounted for by defendants during their surveillance of the residence. (Ex. C, 23:6-13; Ex. B, 59:5-17.)

11.

As soon as defendants witnessed this flash, they heard another CCSO officer call out, "hey, they know we are here." (Ex. C, 23:6-22; Ex. B, 59:5-7.)

12.

Casey, as the first deputy in the stack set to breach the residence, also testified that he could hear running inside of the residence as the deputies were walking up the steps to the front porch. (Ex. C, 13:23-25; 23-24:23-3.)

13.

As defendants approached the front door, Blaquiere shouted "Sheriff's Office-Search Warrant-Come to the Door" before knocking on the front door. (Exhibit E, Downy Casey Body-Worn Camera Video, 00:50 & continuing; Ex. B, 29:22-25.)

14.

CCSO deputies breached the front door within 3 seconds of Blaquiere's initial knock. (Ex. E, 00:50 & continuing; Ex. B, 29-30:18-3.). Once defendants entered the residence, they encountered Brown and Latoya James standing in the bedroom. (Ex. E, 01:00 & continuing; Ex. C,

31:7-19.) CCSO deputies continued to shout "Sherriff's Office Search Warrant" and instructed the individuals to get on the ground. (Ex. E, 01:00 & continuing.)

15.

Defendants could see Brown with one arm around James "like [he] was hugging her" with his firearm sticking around her body before he raised his firearm and began shooting at defendants. (Ex. C, 31-32:2-22; Ex. B, 46:2-16.)

16.

In response to the deadly threat presented by Brown, defendants returned fire, shooting at Brown. (Ex. C, 33-34:1-14; Ex. B, 45:21-24, 46:13-16.) Neither defendant fired blindly, defendants testified they were shooting at Brown. (Ex. C, 33:1-8; Ex. B, 45:21-24.)

17.

During the deposition of plaintiffs' purported law enforcement expert, Charles P. Stephenson, Stephenson testified that is reasonable for officers to fire at a weapon that is firing at them. (Exhibit F, Deposition of Charles P. Stephenson, 123-124:23-2.) Stephenson also testified Casey was justified in using lethal force given the totality of the circumstances surrounding the shooting. (Ex. F, 149:5-14.)

18.

In their complaint, plaintiffs allege that James was visiting her cousin, Varshan Brown, at the residence where the subject incident took place. (Complaint, Introduction.)

19.

In their responses to defendants' written discovery, plaintiffs state they were unaware of the purpose of James's visit to Brown's residence the morning of May 4, 2021. (Exhibit G, Plaintiffs' Answers to Defendants' Interrogatories, p. 9-10.)

20.

Betty Jean Murphy James, James's mother, has testified that she did not know why James was at Brown's residence that morning, how she got there, how long she had been there, if James had ever visited Brown's residence prior to the subject incident, or what James's plans were for that day. (Exhibit H, Deposition of Betty Jean Murphy James, 45:3-11; 60:2-16.)

21.

Plaintiff only knew that James and Brown were "close cousins." (Ex. H, 45:1-1-13.)

22.

In addition, while CCSO deputies were cutting James's shirt off in order to render first aid to James immediately following the shooting, a clear plastic baggie containing a "white powdery substance, believed to be cocaine," fell out of James' bra area. (Exhibit I, Georgia Bureau of Investigation Investigative Summary, p. 109.)

23.

A CCSO deputy also noted that "another plastic baggie with a white power [sic] substance and straw were present on the bed" next to where James's body was located. (Ex. I, p. 109.)

This 27th day of November, 2023.

[*Signatures follow on next page*.]

- 7 -

Respectfully submitted,

**FREEMAN MATHIS & GARY, LLP**

*/s/ Steven L. Grunberg*
Sun S. Choy
Georgia Bar No. 025148
schoy@fmglaw.com
Wesley C. Jackson
Georgia Bar No. 336891
wjackson@fmglaw.com
Steven Grunberg
Georgia Bar No. 146397
sgrunberg@fmglaw.com

*Attorneys for Defendants*

100 Galleria Parkway
Suite 1600
Atlanta, GA  30339-5948
(770) 818-0000 (Telephone)
(770) 937-9960 (Facsimile)

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day electronically submitted the foregoing **DEFENDANTS MICHAEL BLAQUIERE AND DOWNY CASEY'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** to the Clerk of Court using the CM/ECF system which will automatically send electronic mail notification of such filing to counsel of record who are CM/ECF participants.  Counsel of record are:

> Reginald A. Greene, Esq.
> GREENE LEGAL GROUP LLC
> One Georgia Center, Suite 605
> 600 West Peachtree Steet, NW
> Atlanta, Georgia 30308
> rgreene@greenlegalgroup.com
>
> Mario A. Pacella, Esq.
> STROM LAW FIRM, LLC
> 600 West Peachtree Steet, Suite 604
> Atlanta, Georgia 30308
> mpacella@stromlaw.com
>
> Bakari T. Sellers, Esq.
> STROM LAW FIRM, LLC
> 6923 N. Trenholm Road, Suite 200
> Columbia, South Carolina 29206
> bsellers@stromlaw.com
>
> Harry M. Daniels, Esq.
> THE LAW OFFICES OF HARRY M. DANIELS, LLC
> 4751 Best Road, Suite 490
> Atlanta, Georgia 30337
> daniels@harrymdaniels.com

This 27th day of November, 2023.

> */s/ Steven L. Grunberg*
> Steven Grunberg
> Georgia Bar No. 146397
> sgrunberg@fmglaw.com
> *Attorneys for Defendants*

FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway
 Suite 1600
Atlanta, Georgia 30339-5948
T:  (770) 818-0000
F:  (770) 937-9960