IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | | |
|---|---|---|
| C.J., a minor, by and through her<br>next friend and guardian, BETTY<br>JEAN MURPHY JAMES, | ) <br> ) <br> ) <br> ) | |
| and | ) <br> ) | |
| BETTY JEAN MURPHY JAMES,<br>as Administrator of the Estate of<br>Latoya James | ) <br> ) <br> ) <br> ) | |
| Plaintiffs, | ) <br> ) | CIVIL ACTION<br>FILE NO.: 2:22-CV-00078-LGW-BWC |
| v. | ) <br> ) | |
| JIM PROCTOR in his individual<br>capacity, as Camden County Sheriff | ) <br> ) <br> ) | |
| and | ) <br> ) | |
| MICHARL BLAQUIERE, in his<br>individual capacity, as Camden County<br>Deputy Sheriff | ) <br> ) <br> ) <br> ) | |
| and | ) <br> ) | |
| DOWNY CASEY, in his individual<br>capacity, as a Camden County Deputy<br>Sheriff | ) <br> ) <br> ) <br> ) | |
| and | ) <br> ) | |
| JOHN/JANE DOES, in their individual<br>capacities, as Camden County Deputies | ) <br> ) <br> ) <br> ) <br> ) | |
| Defendants. | ) <br> ) | |

**MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

This action arises from the fatal shooting of Latoya James that occurred on May 4, 2021, at 12103 Highway 17 Highway N, Woodbine, Camden County, Georgia, 31569 (the "Residence") while she was visiting her cousin overnight. Defendants were on duty as deputies for the Camden County Georgia Sheriff's Department, when they executed an alleged warrant and forcibly entered the Residence at or around 5:10 a.m., opened fire, and fatally wounded Latoya, who was unarmed. Latoya was pronounced dead at the scene.  Plaintiff filed this Complaint on August 21, 2022. Plaintiff brought claims against Defendants Downy Casey and Michael Blaquiere for unreasonable forcible entry under the Fourth Amendment and 42 U.S.C. § 1983; excessive force under the Fourth Amendment and 42 U.S.C. § 1983; wrongful death based upon gross negligence; and an estate claim pursuant to O.C.G.A. § 51-4-5(b).

Following the discovery period, on November 27, 2023, Defendants Casey and Blaquiere filed their Motion for Summary Judgment.  In their motion, Defendants claim that Plaintiff lacked standing to raise the forcible entry claim, cannot demonstrate a genuine issue of material fact as to either the forcible entry claim or the excessive force claim, and even if those arguments fail, that they are entitled to qualified immunity.  As to the wrongful death claim and the estate claim, Defendants argue that if the first two causes of action fail, then these fail as well. Plaintiffs hereby file this Memorandum in Opposition to Defendants' Motion for Summary Judgment.

## STATEMENT OF THE FACTS

On April 29, 2021, Defendant Blaquiere applied for a "no knock" search warrant with a Camden County Magistrate.  The target of the search warrant was a residence used by Varshan Brown with the address of 1103 US Hwy 17 in Woodbine, Georgia. (Plaintiff's Exhibit 1 Search Warrant.) The foundation for the warrant was a trash pull on April 28, 2021, which allegedly revealed an empty trazadone bottle in Mr. Brown's name, 9 red in color plastic bags which

allegedly contained a powdery substance testing positive for cocaine, three cut straws containing a powdery substance; and a multicolored plastic bag labeled Chuckles Gummy Worms 400 mg THC: 10 individual infused 40mg pieces.[1] Defendant Blaquiere noted in the warrant affidavit that the residence was under investigation for the sales and distribution of narcotics and that Varshan Brown was the primary target. (Plaintiff's Exhibit 1 Search Warrant at 1.) The warrant noted his criminal history, which included aggravated assault against a law enforcement officer and possession of a firearm by a convicted felon. (Plaintiff's Exhibit 1 Search Warrant at 2.) Finally, Defendant Blaquiere swore that he obtained knowledge that "Brown is known to have firearms inside the residence." Notwithstanding the request, the Magistrate denied Defendant Blaquiere's request for a "no knock" warrant requiring the officers to knock and announce their presence and comply with O.C.G.A. § 17-5-27. (Plaintiff's Exhibit 1 Search Warrant at 2.)

Notwithstanding the requirements of O.C.G.A. § 17-5-27 and the Sheriff's Office's General Order No. 03-023 regarding Search & Seizure (Plaintiff's Exhibit 2 General Order No. 03-023 at 5), the Operations Plain fails to set forth what is necessary to use force in the execution of the warrant. Instead of noting that force can only be used if entry is refused; denied because individuals fail to acknowledge and answer the verbal notice; or the location is unoccupied, the Operations Plan reviewed with all members of the warrant execution team merely states "arrive on scene, knock and announce, make entry, clear residence, 2nd search & clear, photos, search & collect." (Plaintiff's Exhibit 3 Operation Plan at 2.) A reasonable jury could conclude from the Operations Plan and the denial of the "no knock" provision that Defendants conduct in the execution of the warrant was intended to subvert the lack of a "no knock" provision.

---

[1] From a reading of the warrant, it appears this bag was empty. (Plaintiff's Exhibit 1 Search Warrant at 1.)

The best evidence depicting the events of the execution of the search warrant is set forth in the body camera video of Defendant Casey.  (Defendants' Exhibit E.) Deputy Casey testified that "[t]ypically we don't wear body cameras into our search warrants" but nonetheless wore one that was primarily hidden by the shield that he used. (Plaintiff's Exhibit 4 Casey Deposition at 15, 28.) [2] As the deputies, including Defendants, approached the Residence, the motion-activated exterior lights turned on, and Deputy Billington stated, "They know we're here."[3] The deputies made no attempt to determine whether anyone within the residence posed a threat to officers, or whether anyone was attempting to destroy evidence. Once at the front door, the deputies assembled with weapons drawn and shields deployed, before knocking on the door and Defendant Blaquiere yelling, "Sheriff's Office. Search warrant. Come to the door."[4] After waiting approximately 2.5 seconds, multiple deputies stated, "Hit it" and forcefully breached the door of the Residence.

When asked why they decided to execute the search warrant in the middle of the night, Defendant Casey stated that they wanted  the element of surprise given the subject of the warrant. (Plaintiff's Exhibit 4 Casey Deposition at 17.) Defendant Casey was first in the stack right at the door. He was asked in his deposition the purpose of a knock and announce.  He testified that the purpose is "to let them know that it's the sheriff's office outside of the door that is fixing to enter the residence." (Plaintiff's Exhibit 4 Casey Deposition at 18.) Upon further prompting, Defendant Casey conceded that knocking and announcing was also to give the occupants an opportunity to

---

[2] Defendants filed the entirety of the depositions of Downy Casey (Defendants' Exhibit C), Michael Blaquiere (Defendants' Exhibit B), Betty James (Defendants' Exhibit H), and Charles Stephenson (Defendants' Exhibit F).  As a result, Plaintiff is only submitting excerpts of these depositions for the court's convenience. However, the Rule 30(b)(6) transcript will be submitted in its entirety. The Exhibits, however, have been omitted from each deposition transcript.

[3] Defendant Casey identified Deputy Billington's voice. (Plaintiff's Exhibit 4 Casey Deposition at 23.)

[4] Defendant Casey identified Deputy Blaquiere as announcing. (Plaintiff's Exhibit 4 Casey Deposition at 25.)

open the door. (Plaintiff's Exhibit 4 Casey Deposition at 18.) Defendant Casey testified that even if he was in bed, it would only take 2-3 seconds from hearing a knock and announce for him to get up and open the door. (Plaintiff's Exhibit 4 Casey Deposition at 18-19.)[5]

In reviewing General Order No. 03-023, Defendant Casey testified that he followed the policy and used forced entry after concluding entry was refused because the occupants did not open the door within those 2.5 seconds. (Plaintiff's Exhibit 4 Casey Deposition at 22.) Deputy Casey further explained that upon approaching the residence, "we could hear running in the house." (Plaintiff's Exhibit 4 Casey Deposition at 23.) While he stated "we", Defendant Blaquiere did not hear running in the house and nothing on the body camera suggested movement from the house. (Exhibit 5 Blaquiere Deposition at 38-39.) Further, Defendant Casey admitted that he did not note hearing running in the house in his Garrity statement to the GBI. (Plaintiff's Exhibit 4 Casey Deposition at 24; Plaintiff's Exhibit 6 Casey Garrity Statement.) As evidence of refusal, Defendant Casey said "if he didn't open the door, then, yeah, I would say it would be refusal." (Plaintiff's Exhibit 4 Casey Deposition at 26.) Defendant Casey also testified that the use of force was based upon part two of the policy in that the occupants failed to acknowledge and answer the verbal notice.

Likewise, Defendant Blaquiere testified that in executing a knock and announce warrant, deputies are supposed to give the occupants "[a] reasonable time for someone to answer." (Exhibit 5 Blaquiere Deposition at 27.) In his Garrity statement, Defendant Blaquiere stated "[after no one came to the door or verbally acknowledged our presence after being given verbal commands, the

---

[5] For all practical purposes, this is impossible. The undersigned tested the length of time it takes for him to get across his office of seven walking steps. Walking it takes just under five seconds, running takes three seconds. Getting out of his office chair from behind his desk takes the same amount of time. The jury can use its own personal understanding of time to understand Deputy Casey's testimony.

door would be breached by Lieutenant Billington with a ram." (Plaintiff's Exhibit 7, Blaquiere Garrity Statement.)

On behalf of the Sheriff's Department, Major James Kevin Chaney, testified as a Rule 30(b)(6) witness as to policies and procedures related to the execution of search warrants that if entry is based upon exigent circumstances, it would be in the report. (Plaintiff's Exhibit 8 Rule 30(b)(6) Deposition at 59.) Significantly Major Chaney was part of the execution of the search warrant and testified that he did not know if entry was refused or denied. (Plaintiff's Exhibit 8 Rule 30(b)(6) Deposition at 60.)

Upon breaching the door, gun fire ensued, killing Latoya James and injuring Varshan Brown.  Varshan Brown was charged with the felony murder of Latoya James.  Following a jury trial, he was acquitted of felony murder but convicted of aggravated assault of police officers and drug and firearms charges. (Plaintiff's Exhibit 9, Brown Jury Verdict Form.)[6] Those convictions are on appeal.

As set forth below, the following genuine issues of material fact exist:

1. Whether the breach of the door was based upon a refusal to answer or exigent circumstances;
2. Whether the breach of the door was actually Defendants trying to go around the judge's refusal to provide a no-knock warrant;
3. Whether Ms. James was an overnight guest in that she was at her close cousin's residence in the middle of the night and found in the bedroom upon entry by law enforcement;
4. Whether Ms. James, as a occupant, was in the class of individuals that the "knock and announce" rule was designed to protect: and
5. Whether the violent entry was such that occupants of the property had the legal right to use lethal force to defend under O.C.G.A. § 16-3-23.

**STANDARD OF DETERMINATION**

---

[6] Counsel has possession of the certified record from the Camden County Clerk of Court.

To prevail on a motion for summary judgment, the moving party must show that the nonmoving party has no evidence to support his or her case or present affirmative evidence that the nonmoving party will be unable to prove his or her case at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). If the moving party successfully negates an essential element of the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* at 322–23, 106 S.Ct. at 2552–53. The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) . A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510 (citation omitted). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* The nonmoving party must show more than the existence of a "metaphysical doubt" regarding the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted). Speculation or conjecture from a party cannot create a genuine issue of material fact. *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005). "A mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004) (citation omitted); *see also Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553. The nonmoving party must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *See Celotex Corp., supra*; *Owen v. Wille*, 117 F.3d 1235, 1236 (11th Cir. 1997) (Rule 56 requires the nonmoving party

to go beyond the pleadings and by his or her own affidavits, or by the depositions, documents, affidavits or declarations, admissions, interrogatory answers or other materials on file designate specific facts showing that there is a genuine issue for trial); *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994).

Evidence presented by the nonmoving party in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to him or her. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Nonetheless, the nonmoving party still bears the burden of coming forward with sufficient evidence of every element that he or she must prove. *See Celotex Corp.*, 477 U.S. at 324–25, 106 S.Ct. at 2553–54. A motion for summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552. Conversely, if a genuine issue of material fact exists, summary judgment must be denied.

I.    **Plaintiff Has Standing to Bring a Claim Under the Fourth Amendment Related to the Use of Force to Gain Entry into the Residence.**

A.    **Plaintiff Has Standing Because Ms. James Was an Authorized Overnight Guest.**

Defendants assert that Plaintiff lacks standing to assert a Fourth Amendment claim related to the execution of the search warrant, contending that there is no genuine issue of material fact as to whether Ms. James was an overnight guest. Factually, the evidence establishes that Ms. James was present in the residence occupied by Mr. Brown during the early morning hours of May 4, 2021, visiting her cousin Varshon Brown with whom she was close. (Plaintiff's Exhibit 10, James Deposition at 44.) Plaintiff confirmed that Ms. James knew about Varshon's criminal history, including his history of incarceration (Plaintiff's Exhibit 10, James Deposition at 50-51.) Further,

Ms. James's twin used to live at the residence where she was shot. (Plaintiff's Exhibit 10, James Deposition at 63.) As such, this is sufficient evidence to create a genuine issue of material fact as to whether she was an overnight guest.

Although Plaintiff does not seek to suppress evidence, case law surrounding the overnight guest for suppression of evidence proves instructive. In *Minnesota v. Olson*, 495 U.S. 91, 96-97, 110 S. Ct. 1684, 109 L. Ed 2d 85 (1990), the defendant sought to suppress an inculpatory statement he made when arrested without a warrant in a home where he was an overnight guest. The Supreme Court held that "Olson's status as an overnight guest is alone enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable." *Id.* In *United States v. Phyfier*, 385 F. Supp. 3d 1198, 1201 (M.D. Ala. 2019), the district court applied *Olson* and noted the "the issue is simple and straightforward: the defendant need show only that he was an overnight guest. The circumstance need not include more." *Id.* (citing *Minnesota v. Carter*, 525 U.S. 83, 96, 119 S. Ct. 469, 142 L. Ed. 2d 373 (1998)). The district court in *Phyfier* further noted that *Olson* "did not hold or even suggest that any specific type of evidence be presented for a defendant to show he is an overnight guest." *Id.*

While an overnight guest in a third party's home can have a legitimate expectation of privacy in the host's home, "the act of staying overnight at a third party residence does not automatically entitle a defendant to the protections of the Fourth Amendment." *United States v. Rodriguez-Alejandro*, 664 F. Supp. 2d 1230, 1341 (N.D.Ga. 2009). Courts have noted that merely occupying a residence or room overnight does not establish a reasonable expectation of privacy in that place for Fourth Amendment purposes. *United States v. McRae,* 156 F.3d 708, 711 (6th Cir. 1998) (finding defendant did not have a legitimate expectation of privacy by virtue of having stayed a week in the vacant premises that he did not own or rent); *United States v. Gale,* 136 F.3d

192, 196 (D.C.Cir.1998) (finding defendant lacked a legitimate expectation of privacy in apartment that he used or resided in without permission of its tenant). Rather, a person claiming the protection of the Fourth Amendment in a third party's residence must prove that he was legitimately in the place searched. *Rakas v. Illinois*, 439 U.S. 128, 143–44 & 143 n. 12, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) (suggesting that wrongful presence on property supports no reasonable expectation of privacy); *United States v. Armenta,* 69 F.3d 304, 308 (9th Cir. 1995) (finding no legitimate expectation of privacy where there was no identifiable "host" who could or did give defendant permission to stay at the house); *United States v. Gonzales–Barrera,* 288 F. Supp. 2d 1041, 1050 (D. Ariz. 2003) ("[A]n 'overnight guest' is more than someone who simply spends the night. Such status is contingent on an invitation by an authorized host."). Moreover, the Eleventh Circuit has held that an overnight guest must "prove that he was a guest for personal reasons, not for a commercial purpose." *United States v. Bell,* 218 Fed. Appx. 885, 895 (11th Cir.2007) (unpublished).

Here, there is more than enough evidence for a jury to conclude that Ms. James was an overnight guest. The key factor in cases where courts did not find a reasonable expectation in a third-party residence is the lack of knowledge and permission of the premises owner. For example, a party does not have a reasonable expectation of privacy when squatting in a vacant property where the owner is not aware of the party's presence and therefore cannot consent to it. Here, Ms. James was in the bedroom in a home occupied by members of her family, including Varshon Brown with whom she was close with in the middle of the night. Moreover, Ms. James's twin had previously stayed at the same residence. There is no indication that anyone occupying the residence objected to or refused consent to Ms. James's staying at the residence. As such, it would be unreasonable to conclude that Ms. James was secretly staying in the home. Rather, it is likely a

jury would conclude that Ms. James had the permission of her family to stay in the home. Thus, a jury could determine that Ms. James had standing to challenge Defendants' conduct under the Fourth Amendment.

> ### B. Plaintiff Has Standing Because Ms. James Was in the Classification of People O.C.G.A.  § 17-5-27 and Knock and Announce Was Intended to Protect.

In *Hudson v. Michigan*, 547 U.S. 586, 126 S. Ct. 2159, 165 L. Ed. 2d 56 (2006), the United States Supreme Court addressed the "knock and announce" rule and whether a violation of it requires suppression of all evidence found in the search. The *Hudson* Court noted that police obtained a warrant to search the home of the defendant and in the context of executing the search warrant, the police "announced their presence, but waited only a short time—perhaps 'three to five seconds'" before making an unforced entry into the home. *Id.* at 588. In *Hudson*, the state of Michigan conceded that there was a knock and announce violation. *Id.* at 590.

However, the Supreme Court concluded that suppression of the evidence seized was not the appropriate remedy for violation of the "knock and announce" rule, noting that:

> [C]ases excluding the fruits of unlawful warrantless searches . . . say nothing about the appropriateness of exclusion to vindicate the interests protected by the knock-and-announce requirement. Until a valid warrant has issued, citizens are entitled to shield "their persons, houses, papers, and effects," U.S. Const., Amdt. 4, from the government's scrutiny. Exclusion of the evidence obtained by a warrantless search vindicates that entitlement. The interests protected by the knock-and-announce requirement are quite different—and do not include the shielding of potential evidence from the government's eyes.

*Id.* at 593.  Instead, the Court noted that "One of those interests is the protection of human life and limb, because an unannounced entry may provoke violence in supposed self-defense by the surprised resident." *Id*. at 594 (citing *McDonald v. United States,* 335 U.S. 451, 460–461, 69 S.Ct. 191, 93 L.Ed. 153 (1948) (Jackson, J., concurring)); *see also Sabbath v. United States*, 391 U.S.

585, 589, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968); *Miller v. United States*, 357 U.S. 301, 313 n. 12, 78 S.Ct. 1190, 2 L.Ed. 2d 1332 (1958). The Supreme Court noted that another interest is the protection of property. *Wilson v. Arkansas*, 514 U.S. 927, 931–932, 115 S.Ct. 1914, 1916, 131 L. Ed. 2d 976 (1996). As a result, the knock-and-announce rule gives individuals "the opportunity to comply with the law and to avoid the destruction of property occasioned by a forcible entry." *Richards v. Wisconsin*, 520 U.S. 385, 393 n. 5, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997); *see also United States v. Banks*, 540 U.S. 31, 41, 124 S.Ct. 521, 157 L. Ed. 2d 343 (2003). Finally, "the knock-and-announce rule protects those elements of privacy and dignity that can be destroyed by a sudden entrance. It gives residents the 'opportunity to prepare themselves for' the entry of the police." *Hudson*, 547 U.S. at 594, 126 S.Ct. 2159 (citing *Richards,* 520 U.S. at 393 n. 5, 117 S.Ct. 1416.). "The brief interlude between announcement and entry with a warrant may be the opportunity that an individual has to pull on clothes or get out of bed." *Id*. More succinctly, the Supreme Court noted that compliance with the knock and announce rule is also a safeguard for police who might be mistaken for prowlers and shot down by fearful householders. *Miller*, 357 U.S. at 313, 78 S.Ct. 1190.

Thus, the "knock and announce" rule serves to protect human life and limb, property, and privacy.  O.C.G.A. § 17-5-27 is in accord with *Hudson* and provides:

> All necessary and reasonable force may be used to effect an entry into any building or property or part thereof to execute a search warrant if, after verbal notice or an attempt in good faith to give verbal notice by the officer directed to execute the same of his authority and purpose:
>
> (1) He is refused admittance;
> (2) The person or persons within the building or property or part thereof refuse to acknowledge and answer the verbal notice or the presence of the person or persons therein is unknown to the officer; or
> (3) The building or property or part thereof is not then occupied by any person.

O.C.G.A. § 17-5-27 requires a law enforcement officer entering an occupied residence for the purpose of executing a search warrant to give or attempt to give verbal notice of his authority and purpose, and it permits a forceful entry if the person inside either refuses to admit him or refuses to acknowledge and answer the verbal notice. *Poole v. State*, 266 Ga. App. 113, 115, 596 S.E.2d 420 (2004). The General Orders of the Sheriff's Department provide the same guidance and criteria to use force in executing a search warrant. (Plaintiff's Exhibit 2 General Order No. 03-023 at 5.)

While not applicable to Defendants, 18 U.S.C. § 3109 permits federal agents to "break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant." In *United States v. Wallace*, 931 F. Supp. 1556, 1560 (M.D. Ala. 1996), the district court succinctly noted the purpose of the knock and announce rule embedded in section 3109:

> The knock-and-announce rule continues to serve the same fundamental interests, including (1) protecting law enforcement officers and household occupants from potential violence; (2) preventing the unnecessary destruction of private property; and (3) protecting people from unnecessary intrusion into their private activities. *United States v. Sagaribay,* 982 F.2d 906, 909 (5th Cir.), *cert. denied,* 510 U.S. 854, 114 S.Ct. 160, 126 L.Ed.2d 120 (1993); *see also United States v. Nolan,* 718 F.2d 589, 596 (3rd Cir.1983). These interests can only be served by a knock-and-announce rule that includes a refusal requirement.

Because the purpose of the "knock and announce" is to protect life and limb, Ms. James, as an overnight guest or occupant of the residence subject to the warrant is in the classification or category of people to rule is to protect, she has standing to make a claim for monetary damages under section 1983 and the Fourth Amendment. This is in accord with the remedy suggested in

*Hudson* when it declined to apply the exclusionary rule to an illegal entry after insufficient time after the knock and announce.  *Hudson*, 547 U.S. at 598, 165 L.Ed.2d 56.

II.   **Only Waiting 2.5 Seconds after Knock and Announce to Use Force in Execution of a Search Warrant Violates the Fourth Amendment Where, as Here, the Justification for Using Force Was Refusal to Open the Door.**

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The principle intrusion against which the Fourth Amendment is aimed is physical entry into one's home. *Payton v. New York*, 445 U.S. 573, 585 (1980) (citation and quotation omitted). "Generally, before executing a search warrant, federal and state officers must provide the occupants of a house with notice of authority and purpose before breaking open any outer or inner door or window." *United States v. Smith*, Crim.A.No. 4-96-CR-15 HLM, 1996 WL 735569, at *2 (N.D. Ga. Aug. 27, 1996) (citations omitted). The Eleventh Circuit has held that while the Fourth Amendment does not explicitly set forth a knock-and-announce principle, the Amendment "incorporates the important common law requirement that police officers entering a dwelling must knock on the door and announce their identity and purpose before attempting forcible entry." *United States v. Segura-Baltazar*, 448 F.3d 1281, 1289 (11th Cir. 2006) (citing *Wilson*, 514 U.S. at 930, 934 ). O.C.G.A. § 17-5-27 is in accord with this constitutional principle.

The general principle from circuit court cases is that waiting any less than five seconds, absent exigent circumstances, is unreasonable.  In *United States v. Jones*, 133 F.3d 358, 361 (5th Cir. 1998) (*per curiam*), the Fifth Circuit noted that "[g]enerally, a delay of five-seconds or less after knocking and announcing has been held a violation of 18 U.S.C. § 3109," while "more than 5 seconds" is normally sufficient. (internal citations omitted).  The Seventh Circuit concluded that a two-second period of silence in response to a nighttime knock cannot on its own support a

reasonable inference that the residents intended to refuse to admit the officers. *Jones v. Wilhelm*, 425 F.3d 455, 468 (7th Cir. 2005). The Tenth Circuit concluded that officers who waited only three seconds and Government failed to even allege officers harbored concern for their safety was unreasonable. *United States v. Moore,* 91 F.3d 96, 98 (10th Cir. 1996). The Eighth Circuit held that waiting 3 to 5 seconds before entering was not long enough under section 3109. *United States v. Lucht,* 18 F.3d 541, 550–51 (8th Cir. 1994). The Eight Circuit further concluded that the lapse of less than 5 seconds was not sufficient to infer refusal of admittance necessary to comply with section 3109. *United States v. Marts,* 986 F.2d 1216, 1217–18 (8th Cir. 1993) (holding a lapse of less than 5 seconds was not sufficient to infer refusal of admittance necessary to comply with § 3109). The Sixth Circuit held that forced entry only seconds after announcing the officers' authority and purpose must be "carefully scrutinized". *United States v. Nabors,* 901 F.2d 1351, 1355 (6th Cir. 1990)). Finally, the Ninth Circuit held that waiting 3 to 5 seconds was insufficient to justify forcible entry in executing a warrant. *United States v. Mendonsa,* 989 F.2d 366, 370 (9th Cir. 1993).

In contrast, the Eleventh Circuit found that officers executing arrest warrant for drug offense did not violate knock and announce requirement by waiting less than a minute after knocking to forcibly enter residence. *United States v. Hromada*, 49 F.3d 685, 689 (11th Cir. 1995). Further, in *United States v. Markling*, 7 F.3d 1309, 1318 (7th Cir. 1993), the Seventh Circuit held that seven seconds was sufficient time to wait before using a battering ram to enter hotel room. Likewise, in *United States v. Knapp*, 1 F.3d 1026, 1030-31 (10th Cir. 1993), the Tenth Circuit held that 10 to 12 seconds was sufficient to wait.[7]

---

[7] Plaintiff is aware of cases in Georgia applying O.C.G.A. § 17-5-27 permit short waiting periods for non-forcible entry. *See Underwood v. State*, 366 Ga. App. 876, 878, 883 S.E.2d 576 (2023)(time lapse of no more than three seconds not unreasonable for non-forcible entry); *Swan v.*

Here, it is undisputed from the body camera footage that Defendants only waited 2.5 seconds before using force to break through the front door with a battering ram. (Defendants' Exhibit E.) The evidence shows that Defendants never intended to wait for a response from the occupants, as they attempted to secure a "no knock" warrant that was denied, and their operations plan merely stated the intent was to "arrive on scene, knock and announce, make entry, clear residence, 2nd search & clear, photos, search & collect." (Plaintiff's Exhibit 3 Operation Plan at 2.) And to be sure that this was not an error, Major Chaney confirmed this Sheriff's office policy. Major Chaney in describing the difference between "no knock" and "knock and announce" warrants testified that if it's a "knock and announce, then you knock, announce, then you hit the door." (Plaintiff's Exhibit 8 Rule 30(b)(6) Deposition at 52.)

In their brief, Defendants attempt to argue that they breached the door as a result of exigent circumstances. While that may be their hindsight argument, it does not entitle them to summary judgment for two very important reasons.  First, Defendants testified and offered statements that the reason for breaching the door with the battering ram was refusal. As evidence of refusal, Defendant Casey said "if he didn't open the door, then, yeah, I would say it would be refusal." (Plaintiff's Exhibit 4 Casey Deposition at 26.) Likewise, Defendant Blaquiere testified that in executing a knock and announce warrant, deputies are supposed to give the occupants "[a] reasonable time for someone to answer." (Plaintiff'sExhibit 5 Blaquiere Deposition at 27.) In his Garrity statement, Defendant Blaquiere stated "[after no one came to the door or verbally acknowledged our presence after being given verbal commands, the door would be breached by

---

*State*, 257 Ga. App. 704, 706-707, 572 S.E.2d 64 (2002)(permitting non-forcible entry made three to five seconds after announcing presence); *Felix v. State*, 241 Ga. App. 323, 325 (4), 526 S.E.2d 637 (1999) (a five- to ten-second interval between announcement and non-forcible entry was reasonable and thus legal). Because these cases note the entry was non-forcible, they do not support Defendants' position.

Lieutenant Billington with a ram." (Plaintiff's Exhibit 7, Blaquiere Garrity Statement.) Second, even if there was an argument of exigent circumstances, in light of the testimony and the Garrity Statements, this is an issue of fact for the jury to determine.  As this is a civil suit, the fact-finder is the jury rather than the trial judge. So long as Plaintiff offers sufficient evidence that there was a genuine issue of fact as to whether the justification was something other than exigent circumstances, summary judgment should be denied.

### III.    Defendants Are Not Entitled to Qualified Immunity on Plaintiff's Unlawful Search Claim.

The Eleventh Circuit restates the standard for qualified immunity in *Edgar v. McCabe*, 84 F.4th 1230, 1235 (11th Cir. 2023).  In general, when government officials are performing discretionary duties, they are entitled to qualified immunity. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). A plaintiff may rebut this entitlement by showing that the government officials (1) committed a constitutional violation; and (2) that this violation was "clearly established" in law at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). As explained in *McCabe, "*this judge-made doctrine is designed to protect government officials from the consequences of their reasonable mistakes made in the exercise of their official duties." *McCabe*, 84 F.4th at 1235 (citing *Pearson,* 555 U.S. at 231, 129 S.Ct. 808.). "The test is conjunctive, and if a plaintiff fails either prong of the qualified immunity analysis, his claim is barred." *Id*. at 1236.

According to the Eleventh Circuit, there are three recognized ways to show that a law is "clearly established." *Id*. at 1235.

> First, a plaintiff may show that a "materially similar case has already been decided," whose facts are similar enough to give the police notice. *See Keating v. City of Miami*, 598 F.3d 753, 766 (11th Cir. 2010). Second, he may show that a "broader, clearly established principle should control the novel facts" of his case. *Id.* This

> "broader" principle may be derived from "general statements of the law contained within the Constitution, *statute*, or caselaw." *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005) (alteration adopted) (emphasis added) (quoting *Willingham v. Loughnan*, 321 F.3d 1299, 1301 (11th Cir. 2003)). Finally, a plaintiff may show that the officer's conduct "so obviously violates [the] constitution that prior case law is unnecessary." *Keating*, 598 F.3d at 766 (quoting *Mercado*, 407 F.3d at 1159). While we must be mindful of the "specific context of the case," we "do[ ] not require a case directly on point for a right to be clearly established." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 142 S. Ct. 4, 7–8, 211 L.Ed.2d 164 (2021) (per curiam).

*Id*. Here, the law regarding what constitutes a denial for purposes of forcible entry in the execution of a search warrant is clearly established by case law and by statute.

The "knock and announce" requirement stems from old English common law. The United States Supreme Court identified the historical origin of the "knock and announce" requirement, noting that a man's house was protected as "his castle of defense and asylum." *Wilson*, 514 U.S. at 931, 131 L. Ed. 2d 976 (citing *3 W. Blackstone, Commentaries \*288.*). The *Wilson* Court further noted:

> The common-law knock and announce principle was woven quickly into the fabric of early American law. Most of the States that ratified the Fourth Amendment had enacted constitutional provisions or statutes generally incorporating English common law, see, *e.g.*, N.J. Const. of 1776, § 22, in 5 Federal and State Constitutions 2598 (F. Thorpe ed. 1909) ("[T]he common law of England ... shall still remain in force, until [it] shall be altered by a future law of the Legislature"); N.Y. Const. of 1777, Art. 35, in *id.*, at 2635 ("[S]uch parts of the common law of England ... as ... did form the law of [New York on April 19, 1775] shall be and continue the law of this State, subject to such alterations and provisions as the legislature of this State shall, from time to time, make concerning the same"); Ordinances of May 1776, ch. 5, § 6, in 9 Statutes at Large of Virginia 127 (W. Hening ed. 1821) ("[T]he common law of England ... shall be the rule of decision, and shall be considered as in full force, until the same shall be altered by the legislative power of this colony"), and a few States had enacted statutes specifically embracing the common-law view that the breaking of the door of a dwelling was permitted once admittance was refused, see, *e.g.*, Act of Nov. 8,

1782, ch. 15, ¶ 6, in Acts and Laws of Massachusetts 193 (1782); Act of Apr. 13, 1782, ch. 39, § 3, in 1 Laws of the State of New York 480 (1886); Act of June 24, 1782, ch. 317, § 18, in Acts of the General Assembly of New-Jersey (1784) (reprinted in The First Laws of the State of New Jersey 293-294 (J. Cushing comp.1981)); Act of Dec. 23, 1780, ch. 925, § 5, in 10 Statutes at Large of Pennsylvania 255 (J. Mitchell & H. Flanders comp.1904). Early American courts similarly embraced the common-law knock and announce principle. See, *e.g., Walker v. Fox,* 32 Ky. 404, 405 (1834); *Burton v. Wilkinson,* 18 Vt. 186, 189 (1846); *Howe v. Butterfield,* 58 Mass. 302, 305 (1849). See generally *934 Blakey, The Rule of Announcement and Unlawful Entry, 112 U.Pa.L.Rev. 499, 504-508 (1964) (collecting cases).

*Id*. at 933-934, 115 S. Ct. at 1917. The Supreme Court further held that the knock and announce principle embedded in Anglo-American law was an element of the reasonableness inquire of the Fourth Amendment. *Id*. at 934, 115 S. Ct. at 1918. In applying this rule, Congress for federal agents and the Georgia legislature for state officers passed statutes to apply this constitutional principle.

In *Hudson*, the Supreme Court concluded that the exclusionary rule was not an appropriate remedy for a violation of the knock and announce requirement. Instead, it favored a civil remedy against the officers where the state conceded that 3-5 seconds after knock and announce but before forcible entry was unreasonable. *Hudson*, 547 U.S. at 598, 165 L.Ed.2d 56. In *United States v. Banks*, 540 U.S. 31, 39–40, 124 S. Ct. 521, 527, 157 L. Ed. 2d 343 (2003), the Supreme Court offered insight into reasonableness of time finding that "if the officers were to justify their timing here by claiming that Banks's failure to admit them fairly suggested a refusal to let them in, Banks could at least argue that no such suspicion can arise until an occupant has had time to get to the door, a time that will vary with the size of the establishment, perhaps five seconds to open a motel room door, or several minutes to move through a townhouse."  The holding in *Banks*, however, permitted 15-20 seconds delay where the officers reasonably believed evidence would be destroyed.

Much of the federal caselaw suggests that, absent exigent circumstances, less than five seconds is unreasonable. *See Jones*, 133 F.3d at 361 (finding "[g]enerally, a delay of five-seconds or less after knocking and announcing has been held a violation of 18 U.S.C. § 3109," while "more than 5 seconds" is normally sufficient. (internal citations omitted)); *Wilhelm*, 425 F.3d at 468 (concluding that a two-second period of silence in response to a nighttime knock cannot on its own support a reasonable inference that the residents intended to refuse to admit the officers); *Moore,* 91 F.3d at 98 (concluding that officers who waited only three seconds and Government failed to even allege officers harbored concern for their safety was unreasonable); *Lucht,* 18 F.3d at 550–51 (holding that waiting 3 to 5 seconds before entering was not long enough under section 3109); *Marts,* 986 F.2d at 1217–18 (8th Cir. 1993) (holding a lapse of less than 5 seconds was not sufficient to infer refusal of admittance necessary to comply with § 3109); *Nabors,* 901 F.2d at 1355 (holding that forced entry only seconds after announcing the officers' authority and purpose must be "carefully scrutinized"); *Mendonsa,* 989 F.2d at 370 (holding that waiting 3 to 5 seconds was insufficient to justify forcible entry in executing a warrant). Further, the Supreme Court's decision in *Banks* clearly delineates reasonableness of time based upon the structure involved, noting that five seconds may be sufficient for a motel room and several minutes for a townhouse. *Banks*, when read in light of federal case law applying section 3109 and the statutory framework of O.C.G.A. § 17-5-27 establishes that forcible entry in the execution of a search warrant requires refusal and that more than five seconds is required to infer refusal. Thus, Plaintiff has established at least demonstrated a genuine issue of material fact as to whether the forcible entry 2.5 seconds after the knock and announce constituted a refusal because five seconds or more is necessary, but not necessarily sufficient, to constitute a refusal under clearly established law.

While exigent circumstances may justify a dynamic entry to excuse compliance with the knock and announce requirement, as noted above, there is a genuine issue of material fact as to whether the forced entry was based upon Defendant Casey's testimony and Defendant Blaquiere's Garrity statement that forced entry was based upon refusal versus attempts to justify their failure to comply with clearly established law through the doctrine of exigent circumstances. Thus, this is a jury question.

### IV. Defendants' Breach of the Door in Violation of the Fourth Amendment and Subsequent Shooting of Ms. James Constituted Excessive Force.

"To determine whether an officer's force was unreasonable, the Supreme Court has directed that [courts] consider (1) the severity of the crime; (2) whether the individual 'posed an immediate threat to the safety of the officers or others'; and (3) whether the individual 'actively resisted arrest or attempted to evade arrest by flight.'" *Patel v. City of Madison, Ala.*, 959 F.3d 1330, 1339 (11th Cir. 2020) (quoting *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)) (alterations adopted)). The Eleventh Circuit has also considered "(4) the need for force to be applied; (5) the amount of force applied in light of the nature of the need; and (6) the severity of the injury." *Id.* (citing *Lee v. Ferraro*, 284 F.3d 1188, 1197–98 (11th Cir. 2002); *Sebastian v. Ortiz*, 918 F.3d 1301, 1308 (11th Cir. 2019)). Nonetheless, it remains well established in the Eleventh Circuit that "where an arrest is supported by probable cause, the application of de minimis force as needed to effect the arrest, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Williams v. Sirmons*, 307 F. App'x 354, 360 (11th Cir. 2009).

Excessive force decisions have served to continue putting reasonable law enforcement officers on notice of the rights of citizens, even those suspected of committing crimes, to be free from excessive, and particularly deadly, force. In *Acoff v. Abston*, 762 F.2d 1543, 1545, 1547-48

(11th Cir. 1985), a directed verdict against plaintiff, a burglary suspect who had been shot in the chest while fleeing and holding some objects in his hands, was reversed because the officer did not give any warning and because jury could have disbelieved officer's testimony about what he believed the circumstances to be. In *Pruitt v. City of Montgomery*, 111 F.2d 1475, 1477-84 (11th Cir. 1985), the Eleventh Circuit affirmed summary judgment in favor of plaintiff, a nighttime burglary suspect who had been shot after he refused to obey the order to halt, where there was no evidence that the plaintiff there posed any physical threat to officer or others or that plaintiff had committed a crime involving the infliction or threatened infliction of serious physical harm. In *Lundgren v. McDaniel*, the Eleventh Circuit held that the use of deadly force was unconstitutional where deputies investigated what they believed to be a night-time burglary of a store. The police entered the store and testified they were fired upon before returning fire, shooting and killing one of two purported suspects. The survivor, who turned out to be the wife of the store's owner, who had been fatally shot, disputed that they had fired any shots at police. A jury ruled in favor of the plaintiff and the Eleventh Circuit affirmed, also holding that the deputies were not entitled to qualified immunity **because a jury could reasonably conclude that "the officers without provocation shot at a non-dangerous suspect."** 814 F.2d 600, 603 (11th Cir. 1987) (emphasis added.) In *Carr v. Tatangelo*, 338 F.3d 1259, 1268-69 (11th Cir. 2003), a suspect shot after he threw a rock at bushes from where police were conducting surveillance, and while he had his hand up to throw another rock, was found to have stated a cognizable Fourth Amendment seizure claim.

Moreover, where an officer creates conditions that are highly likely to cause harm and unnecessarily so, and the risk so created actually, but accidentally, causes harm, the case is not removed from Fourth Amendment scrutiny. *Stamps v. Town of Framingham*, 813 F.3d 27, 35 (1st Cir. 2016). Here, the convergence of Defendants' unlawful breach of the door based upon its

violation of the "knock and announce" rule, reasonably created the danger that resulted in Defendants firing and killing Ms. James.  As *Hudson* recognizes, 547 U.S. at 594, a violation of the "knock and announce" could result in a occupier of a dwelling to take measures to protect his or her home under the castle doctrine in supposed self-defense. Georgia has codified the castle doctrine in O.C.G.A. § 16-3-23, which permits a person in using deadly force to prevent or terminate unlawful entry into habitation if:

> (1) The entry is made or attempted in a violent and tumultuous manner and he or she reasonably believes that the entry is attempted or made for the purpose of assaulting or offering personal violence to any person dwelling or being therein and that such force is necessary to prevent the assault or offer of personal violence;
> (2) That force is used against another person who is not a member of the family or household and who unlawfully and forcibly enters or has unlawfully and forcibly entered the residence and the person using such force knew or had reason to believe that an unlawful and forcible entry occurred; or
> (3) The person using such force reasonably believes that the entry is made or attempted for the purpose of committing a felony therein and that such force is necessary to prevent the commission of the felony.

O.C.G.A. § 16-3-23. Here, the forced unlawful entry resulted in what could reasonably be expected, that the occupants would believe that their castle was being invaded for the purpose of violence or other felony. Supporting this argument is the jury verdict acquitting Varshon Brown of felony murder. (Plaintiff's Exhibit 9, Brown Jury Verdict Form.)[8]

Moreover, the "knock and announce" and waiting only 2.5 seconds in the middle of the night when seeking to execute a search warrant on a home constitutes an insufficient warning like *Pruitt.* Further, it is undisputed that Ms. James fired no shots and was unarmed and not dangerous.

---

[8] Plaintiff recognizes the inconsistency of the jury verdict as to felony murder versus aggravated assault of police officers, which all the more makes this a jury question here.

*Lundgren* supports Plaintiff's proposition that Defendants used excessive force by shooting at a non-dangerous suspect of Ms. James.

The *Graham* factors weigh in Plaintiff's favor. First, there is no evidence that Ms. James was a suspect or committed a crime. Second, there was no evidence she posed any threat to the officers. Third, because of the timing, there is no evidence that she was resisting or attempting to evade arrest. Even more so, there was no warrant and she was not under arrest. Fourth, Fifth, and Sixth, as to any need to apply deadly force causing Ms. James death, such a need was only as to Varshon Brown and only after Defendants created the danger as a result of their unlawful entry. Thus, the issues of fact related to the unlawful entry by Defendants require the Court to deny summary judgment as to the excessive force claim as well.

## V. Defendants Are Not Entitled to Qualified Immunity on Plaintiff's Excessive Force Claim.

As noted, Defendants created the danger by their unlawful entry. This alone defeats qualified immunity. Further, the Eleventh Circuit has recognized that in excessive force cases, that if "the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw, the official is not entitled to the defense of qualified immunity." *Priester v. City of Riviera Beach,* 208 F.3d 919, 926 (11th Cir.2000). To come within the narrow exception, a plaintiff must show that the official's conduct was such that he had to know he was violating the Constitution This test entails determining whether "application of the [excessive force standard would inevitably lead every reasonable officer in [the Defendants'] position to conclude the force was unlawful." *See Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1559 (11th Cir. 1993), *as amended,* 14 F.3d 583 (11th Cir.1994); *see also Jones v. City of Dothan,* 121 F.3d 1456, 1460 (11th Cir. 1997). Here, shooting at an unarmed person in a dwelling where Plaintiff has established

with evidence that the officers did not have the proper legal authority to enter because they failed

to wait sufficient time after a knock and announce meets this test.  Thus, Plaintiff has demonstrated

a genuine issue of material fact on the issue of qualified immunity.

### VI.   Plaintiff Agrees with Defendants that Her Wrongful Death and Estate Claims are Tied to the Unlawful Search and Excessive Force Claims.

Plaintiff agrees that the fourth and fifth causes of action are derivative of the constitutional

claims.  Because genuine issues of material fact exist as to those claims, genuine issues of material

fact exist as to the fourth and fifth causes of action.

Respectfully submitted this 28th day of December, 2023.

Strom Law Firm, LLC

/s/Mario A. Pacella
Mario A. Pacella
Georgia Bar No. 558519
P.O. Box 1635
Brunswick, GA 31521
Tel: (912) 264-6465
Fax: (912) 264-6470
mpacella@stromlaw.com

Bakari T. Sellers
(*Pro hac vice*)
Strom Law Firm, LLC
6923 N. Trenholm Rd., Suite 200
Columbia, SC 29206
Tel: (803) 252-4800
Fax: (803) 252-4801
bsellers@stromlaw.com

Reginald A. Greene
Georgia Bar No. 308674
Greene Legal Group
One Georgia Center, Suite 605
600 West Peachtree Street, NW
Atlanta, GA 30308
Tel: (404) 574-4308
Fax: (912) 574-4312
ggreene@greenelegalgroup.com

Harry M. Daniels
(*Pro hac vice*)
4751 Best Road, Suite 490
Atlanta, GA 30337
Tel: (678) 664-8529
Fax: (800) 867-5248
daniels@harrydaniels.com

## <u>CERTIFICATE OF SERVICE</u>

I, Mario A. Pacella, counsel for Plaintiff, certify that I served all counsel of record via the Court's CM/ECF system on this the 28th day of December, 2023.

s/Mario A. Pacella
Mario A. Pacella
