IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | | |
|---|---|---|
| C.J., a minor, by and through her next friend and guardian, BETTY JEAN MURPHY JAMES, | ) ) ) ) | |
| and | ) ) | |
| BETTY JEAN MURPHY JAMES, as Administrator of the Estate of Latoya James | ) ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION FILE NO.: 2:22-CV-00078-LGW-BWC |
| v. | ) ) | |
| MICHAEL BLAQUIERE, in his individual capacity, as Camden County Deputy Sheriff | ) ) ) ) ) | |
| and | ) ) | |
| DOWNY CASEY, in his individual capacity, as a Camden County Deputy Sheriff | ) ) ) ) | |
| and | ) ) | |
| JOHN/JANE DOES, in their individual capacities, as Camden County Deputies | ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS MICHAEL BLAQUIERE AND DOWNY CASEY'S REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

COME NOW Michael Blaquiere and Downy Casey, in their individual capacities, ("Defendants") and pursuant to Local Rule 7.6, file their reply brief in support of their motion for summary judgment, showing the Court as follows:

I.       **INTRODUCTION**

In her response, plaintiff relies on overextended assumptions to refute defendants' argument that James did not have a reasonable expectation of privacy in Brown's residence at the time of the subject incident. (See Doc. 50, p. 9.) Specifically, plaintiff argues James was an overnight guest in Brown's residence and thus had a reasonable expectation of privacy in the residence. (Id.) However, none of the evidence plaintiff cites actually supports the inference that James was an overnight guest.

Plaintiff also argues that James has standing to bring a Fourth Amendment claim for unreasonable search because she was in the classification of people O.C.G.A. § 17-5-27 was intended to protect. (See Doc. 50, p. 11.) However, whether or not defendants violated O.C.G.A. § 17-5-27 is irrelevant to plaintiff's § 1983 claims. See Virginia v. Moore, 553 U.S. 164, 171 (2008) ("state restrictions do not alter the Fourth Amendment's protections.").

Regarding qualified immunity, plaintiff's response fails to point to any clearly established law that would overcome this defense. Further, plaintiff appears to argue defendants are not entitled to qualified immunity on plaintiff's excessive force claims because their initial, allegedly unlawful entry of the residence created the dangerous situation that necessitated the use of deadly force. (See Doc. 50, pp. 24–25.) However, as the Supreme Court has held, an unlawful entry into a residence "cannot transform a later, reasonable use of force into an unreasonable seizure." Smith on behalf of Est. of Smith v. Ford, 488 F. Supp. 3d 1314, 1330 (M.D. Ga. 2020) (quoting Cnty. of Los Angeles, Calif. v. Mendez, 581 U.S. 420, 423 (2017)).

As explained in further detail below, the Court should grant defendants' motion for summary judgment.

## II.     ARGUMENT AND CITATION TO AUTHORITY

### A.     § 1983 Unreasonable Entry (Count I)

#### 1.     James did not have a reasonable expectation of privacy in Brown's residence.

As argued in defendants' moving brief, an individual's Fourth Amendment rights are not implicated by a search of a thing or place in which they have no reasonable expectation of privacy. United States v. Ross, 963 F.3d 1056, 1062 (11th Cir. 2020). While being an overnight guest of a residence *may* trigger the protections afforded by the Fourth Amendment, being an overnight guest does not, in and of itself, guarantee these protections. United States v. Bushay, 859 F. Supp. 2d 1335, 1349–50 (N.D. Ga. 2012). Indeed, the Supreme Court and the Eleventh Circuit have routinely held that individuals do not have a reasonable expectation of privacy simply by virtue of their presence in a residence at the time a search is conducted. See, e.g., United States v. Garcia, 741 F.2d 363, 366 (11th Cir. 1984) ("[o]n the other hand, mere presence in the apartment would not be enough to give [defendant] standing, for the precedents binding on this court require that an occupant other than the owner or lessee of an apartment demonstrate a significant and current interest in the searched premises in order to establish an expectation of privacy.").

Without a citation to any evidence in the record, plaintiff claims James "was visiting her cousin overnight" and was an "overnight guest." (Doc. 50, pp. 2, 10.) But stating in a brief that James was an "overnight guest" does not make it so. Rather than using actual evidence in the record, plaintiff attempts to establish James's privacy interest in the residence by pointing to her familial relationship with Brown and their contention that James's twin had previously stayed at the same residence. (Id., p. 10.) Plaintiff also argues that there is no indication anyone occupying the residence objected to or refused consent to James staying at the residence. (Id.) However, these facts do nothing to establish, or even suggest, that James was in fact an *overnight* guest of the

residence. Nor does being related to the owner or lessee of the residence create a reasonable expectation of privacy in the residence. See United States v. Sweeting, 933 F.2d 962, 964 (11th Cir.1991) (defendants failed to establish standing in residence where they maintained that residence was rented by their mother as a residence for their grandmother even though they had temporary access along with other members of the family and had some personal effects there). Again, plaintiff has conceded she is unaware of the purpose of James's visit to Brown's residence the morning of the subject incident, why she was in the residence that morning, how she got there, and, perhaps most importantly for the question of whether James was an "overnight" guest, how long she had been there. (See Doc. 39-1, p. 7.) Plaintiff cannot have it both ways. She cannot acknowledge she is unaware of the length and purpose of James's visit at Brown's residence while simultaneously claiming she was an overnight guest.

In short, there is no evidence in the record—circumstantial or direct—as to when James arrived at the home, whether she intended to sleep, or whether she simply intended to visit momentarily. Without such evidence, plaintiff has nothing with which to satisfy her burden of pointing to a material issue of fact as to James's reasonable expectation of privacy on summary judgment. However, there is *circumstantial* evidence as to the purpose for James's presence at the residence, but that does not help plaintiff's case on summary judgment. The *only* evidence in the record as to James's purpose for being at the residence is the illegal contraband found on her person after the incident. (Doc. 39-2, p. 6, ¶ 22.) Thus, for all anyone knows, James may have arrived at the residence just moments before defendants to purchase drugs. Those circumstances certainly would not give James a reasonable expectation of privacy in the home. See Mays v. Davenport, 560 F. App'x 958, 963 (11th Cir. 2014) (individual did not have a legitimate expectation of privacy in another's motel room where their primary reason to be in the motel room was to acquire and

smoke crack cocaine). But even considering the evidence in a light most favorable to plaintiff, the most the Court can conclude is that James was present at the home at the time of the incident. No other inferences can be drawn (at least, none favorable to the plaintiff), and there simply is not enough evidence on summary judgment to create an issue of fact on the question of James's expectation of privacy.

> **2. O.C.G.A. § 17-5-27 and the Knock and Announce Rule do not establish a reasonable expectation of privacy for purposes of plaintiff's § 1983 Fourth Amendment claims.**

Next, plaintiff argues James has "standing" to bring a Fourth Amendment claim for unreasonable search because she was "in the classification of people O.C.G.A. § 17-5-27 and Knock and Announce" was intended to protect. (Doc. 50, p. 11.) Again, "[i]n order for Fourth Amendment protections to apply, the person invoking the protection *must* have an objectively reasonable expectation of privacy in the place searched or item seized." Rehberg v. Paulk, 611 F.3d 828 842 (11th Cir. 2010) (citing Minnesota v. Carter, 525 U.S. 83, 88 (1998)) (emphasis added). "To establish a reasonable expectation of privacy, the person must show (1) that he manifested a subjective expectation of privacy in the item searched or seized, and (2) a willingness by society "to recognize that expectation as legitimate." Id. (internal quotation omitted). Plaintiff attempts to argue around this requirement by claiming James was part of the "class" of individuals O.C.G.A. § 17-5-27 and knock-and-announce were intended to protect.

Plaintiff's reliance on O.C.G.A. § 17-5-27 for the purpose of establishing James's "standing" is misplaced. First, and perhaps most importantly, this Court should reject plaintiff's invitation to directly contradict a state court's ruling on a question of state law. A Georgia trial court has already reviewed the evidence and testimony regarding this particular incident and concluded that defendants *did not* violate Georgia law or O.C.G.A. § 17-5-27. In the underlying

criminal prosecution against Varshan Brown, Mr. Brown moved to suppress evidence from trial on the theory that the officer's entry violated O.C.G.A. § 17-5-27—the exact theory plaintiff proffers here. (See State v. Brown, Camden County Superior Court SUCR2022000110, Motion to Suppress, Aug. 11, 2023, pp. 2-3, ¶¶ 19-20 (previously filed at Doc. 45-1).). After a hearing on the motion (see State v. Brown, Transcript (previously filed at Doc. 45-2)), the trial court denied the motion to suppress, specifically finding that the entry was lawful (see State v. Brown, Order, August 22, 2023, p. 1 (previously field at Doc. 45-3).) Accordingly, plaintiff's argument that she has standing to assert a Fourth Amendment entry claim because defendants allegedly violated O.C.G.A. § 17-5-27 would require this Court to find that a state court judge improperly analyzed a question of state law. Obviously, pure questions of state law should be left to state law judges, and the Court should decline to adopt plaintiff's interpretation of O.C.G.A. § 17-5-27 in the interests of comity.[1]

Second, "standing" is not the prerequisite for bringing an unreasonable search claim; rather, it is whether or not James had a reasonable expectation of privacy in the place searched. As shown above, she did not.

Third, whether defendants violated O.C.G.A. § 17-5-27, or whether James was part of the class of people the Georgia General Assembly intended to protect with that statute, is irrelevant to the Fourth Amendment analysis required for plaintiff's § 1983 claims. Indeed, the Supreme Court has cautioned against changing the "reasonableness" assessment which governs the Fourth Amendment when "a State chooses to protect privacy beyond the level that the Fourth Amendment requires." Virginia v. Moore, 553 U.S. 164, 171, 175 (2008) ("state restrictions do not alter the

---

[1] Indeed, as of this filing, a motion for new trial filed by Mr. Brown's criminal defense counsel remains pending. (See State v. Brown, Motion for New Trial, Oct. 4, 2023 (previously filed at Doc. 45-4.)

Fourth Amendment's protections.").[2] Further, plaintiff's argument that James belonged to the class of people the knock-and-announce rule was intended to protect again ignores the requirement that plaintiff must demonstrate James had a reasonable expectation of privacy in Brown's residence. The mere existence of a rule does not in and of itself create a privacy interest warranting Constitutional protection.

### 3. Defendants' entry was reasonable given the existence of exigent circumstances.

In her response, plaintiff argues defendants violated James's Fourth Amendment rights in breaching the residence 2.5 seconds after the knock-and-announce because, she claims, their stated justification for using force was the occupants' refusal to open the door. (Doc. 50, p. 14.) While this argument appears to confuse the Fourth Amendment analyses for unreasonable force and excessive force, it also grossly mischaracterizes the record evidence. Plaintiff contends defendants' *only* reasoning for breaching the door of the residence after their knock-and-announce was the refusal to open the door. (Id. at 16.) However, both defendants testified to the specific factors that contributed to how long deputies waited between knocking and announcing their presence and the breach of the residence. (See Doc. 39-4, Blaquiere Dep. 58:25-60:19; Doc. 39-5, Casey Dep. 87:15-89:9.) These factors included the flash from the security camera on the porch of the residence, the sound of footsteps running through the home, Brown's criminal history, evidence

---

[2] To be sure, even if O.C.G.A. § 17-5-27 had any application to plaintiff's Fourth Amendment claims, Georgia state courts allow for exceptions to the rule in O.C.G.A. § 17-5-27. Notably, those exceptions include the very same exigent circumstances plaintiff now claims are irrelevant to this matter. See Hourin v. State, 301 Ga. 835, 847, 804 S.E.2d 388, 397 (2017) ("We have held that exigent circumstances may obviate the need to comply with the knock-and-announce procedure."); Smith v. State, 308 Ga. App. 280, 280, 707 S.E.2d 175, 176 (2011) ("[C]ompliance with O.C.G.A. § 17–5–27 in the execution of a search warrant is not required where the police have a reasonable, good faith belief that forewarning would increase their peril or lead to the immediate destruction of evidence."); Poole v. State, 266 Ga. App. 113, 115, 596 S.E.2d 420, 422 (2004) ("The notice requirement of that Code section [O.C.G.A. § 17-5-27] may be dispensed with, however, by a no-knock provision in the warrant or by the presence of exigent circumstances.").

of drug trafficking at the residence, and intel regarding the existence of firearms inside the residence. (Id.) These factors, together, would indicate to a reasonable officer that exigent circumstances were present because their presence was known and a known, violent, armed drug dealer could be preparing to destroy evidence, destroy the officers, or both.

Given the facts known to defendants prior to the subject incident, coupled with the situation presented to them while they executing the search warrant, sufficient exigent circumstances existed for defendants to do without the Fourth Amendment's knock-and-announce requirement. The existence of exigent circumstances is not, as plaintiff suggests, a subjective one. (See Plaintiff's Response, p. 16-17.) When determining if exigent circumstances existed that would do away with the knock-and-announce requirement, the "Court must examine the totality of the circumstances to determine whether an officer had a 'particularized and objective' basis to support his suspicion." Whittier v. Bruna, 343 F. App'x 505, 508 (11th Cir. 2009) (quoting Brent v. Ashley, 247 F.3d 1294, 1304 (11th Cir. 2001)).

Next, plaintiff argues the law "regarding what constitutes a denial for purposes of forcible entry in the execution of a search warrant is clearly established by case law and statute." (Doc. 50, p. 18.) Much of the case law cited by plaintiff in this regard is persuasive authority only and often involves the application of 18 U.S.C. § 3109, which applies to federal agents only—a point plaintiff readily concedes in her response. (Id. at p. 13, 20.) Plaintiff also relies on O.C.G.A. § 17-5-27 in an attempt to argue that the law regarding what is considered to be a "reasonable" amount of time between a knock-announce and breach is clearly established. (Id. at 20.) However, in this Circuit, the law can be clearly established for qualified immunity purposes only by decisions of the United States Supreme Court, the Eleventh Circuit Court of Appeals, or the Georgia Supreme Court. Jenkins v. Talladega City Bd. of Educ., 115 F.3d 821, 823 n.4 (11th Cir. 1997). As argued

in their moving brief, defendants are not aware of any bright-line rule promulgated by the United States Supreme Court, the Eleventh Circuit Court of Appeals, or the Georgia Supreme Court which would have put them on notice that it was plainly unconstitutional to wait less than 3 seconds before breaching a residence during the execution of a search under the circumstances presented to defendants here.

For purposes of the qualified immunity analysis, it is worth noting that recent appellate decisions in Georgia regarding the amount of time necessary to wait before a forced entry under O.C.G.A. § 17-5-27 show that that question was decidedly *not* clearly established at the time of this incident (May 4, 2021). On January 27, 2023 (almost two years after this incident), the Georgia Court of Appeals ruled three seconds was a sufficient lapse of time between a knock and an entry under O.C.G.A. § 17-5-27. Underwood v. State, 366 Ga. App. 876, 880, 883 S.E.2d 576, 579 (2023), cert. granted (Sept. 6, 2023). In a concurring opinion, Judge Gobeil opined that a "two- to three-second interval would be sufficient." Id. at 880, 883 S.E.2d at 579 (J. Gobeil, concurring). And in a dissenting opinion, Presiding Judge McFadden stated that a two-second interval would be "a bridge too far." Id. at 882, 883 S.E.2d at 580 (P.J. McFadden, dissenting). On September 6, 2023, the Georga Supreme Court granted certiorari on the question of "[w]hether law enforcement's entry into Petitioner's house violated OCGA § 17-5-27." Underwood v. State, Case No. S23C0714 (Ga. Sept. 6, 2023).[3]

Thus, plaintiff's reliance on O.C.G.A. § 17-5-27 is flawed five times over: a state court has already held that these defendants did not violate O.C.G.A. § 17-5-27; violations of state law are irrelevant to plaintiff's § 1983 claims; the Georgia Court of Appeals has not clearly held that 2.5 seconds would be an insufficient amount of time; the Georgia Supreme Court (the only state court

---

[3]Available at: https://www.gasupreme.us/wp-content/uploads/2023/09/s23c0714.pdf.

- 9 -

that can clearly stablish law for purposes of qualified immunity) has not even ruled on the question; and even if the Georgia Supreme Court ultimately holds that 2.5 seconds is an insufficient amount of time, that holding will not be retroactive, for qualified immunity purposes, to the date of this incident.

As to the federal cases cited in plaintiff's brief, not a single one of them stands for the proposition that waiting less than three seconds violates the Constitution, and not a single one of them can be used to define "clearly established law" for this case because most of them are not published decisions of the U.S. Supreme Court, the Eleventh Circuit Court of Appeals, or the Georga Supreme Court.[4] The only Eleventh Circuit case plaintiff cites is United States v. Hromada, 49 F.3d 685 (11th Cir. 1995). Because this case stands for the proposition that waiting less than a minute before entering does not violate § 3109, it cannot be used to clearly establish that waiting 2.5 seconds before entering violates the Fourth Amendment. See id. at 689.

Furthermore, neither of the cases from the United States Supreme Court cited in plaintiff's brief clearly establish that waiting 2.5 seconds before entering—with or without exigent circumstances—violates the Fourth Amendment. In Hudson v. Michigan, the Supreme Court considered a situation where officers waited "three to five" seconds, but expressly declined to consider *whether* such amount of time was sufficient because the state had conceded a knock-and-announce violation. 547 U.S. 586, 590 (2006). Likewise, in United States v. Banks, the Supreme

---

[4] Plaintiff cites to the following cases, and the disqualifying characteristic of the case, for purposes of the qualified immunity analysis, is in **bold**: United States v. Jones, 133 F.3d 858 (**5th Cir.** 1998) (also inapposite because it interprets **18 U.S.C. § 3109**); Jones v. Wilhelm, 425 F.3d 455 (**7th Cir.** 2005) (officers waited "**only two seconds," and did not have exigent circumstances,** whereas defendants here waited 2.5 seconds with exigent circumstances); United States v. Moore, 91 F.3d 96 (**10th Cir.** 1996); United States v. Lucht, 18 F.3d 541 (**8th Cir.** 1994); United States v. Marts, 986 F.2d 1216 (**8th Cir.** 1993); United States v. Nabors, 901 F.2d 1351 (**6th Cir.** 1990); United States v. Mendonsa, 989 F.2d 366 (**9th Cir**. 1993); United States v. Markling, 7 F.3d 1309 (**7th Cir.** 1993); United States v. Knapp, 1 F.3d 1026 (**10th Cir.** 1993).

Court held that an interval of 15 to 20 seconds was reasonable; but that does not clearly establish that a lesser time *is not* reasonable (and indeed, the Court held that "if circumstances support a reasonable suspicion of exigency when officers arrive at the door, they may go straight in."). 540 U.S. 31, 36 (2003).

Plaintiff has failed to satisfy her burden of pointing to prior case law clearly establishing that defendants violated the Constitution under the circumstances. Defendants therefore remain entitled to qualified immunity as to plaintiff's Fourth Amendment claims for unreasonable search.

**B.      § 1983 Excessive Force (Count II)**

  **1.     The defendants' force was reasonable.**

The entirety of plaintiff's argument in support of her Fourth Amendment claim for excessive force appears to be premised on her belief that defendants unlawfully created a dangerous situation that led to the need for deadly force. (See Doc. 50, pp. 24-25.) Specifically, plaintiff argues it was defendants' unlawful breach of the residence that precipitated the use of deadly force resulting in James's death. (Id. at pp. 22-25.) Without saying it, plaintiff is attempting to invoke the repudiated "provocation rule" to the facts at hand. The provocation rule permitted an excessive force claim under the Fourth Amendment "where an officer intentionally or recklessly provokes a violent confrontation, if the provocation is an independent Fourth Amendment violation," even where the use of force was otherwise reasonable under the Graham factors. Cnty. of Los Angeles, Calif. v. Mendez, 581 U.S. 420, 426–27 (2017)). However, the Supreme Court has held that "the Fourth Amendment provides no basis for such a rule." Id. at 423. A different Fourth Amendment violation, i.e., an unlawful entry into a residence, "cannot transform a later, reasonable use of force into an unreasonable seizure." Id. As the Court explained:

> The basic problem with the provocation rule is that it fails to stop [with the objective reasonableness standard of Graham]. Instead, the

> rule provides a novel and unsupported path to liability in cases in which the use of force was reasonable. Specifically, it instructs courts to look back in time to see if there was a different Fourth Amendment violation that is somehow tied to the eventual use of force. That distinct violation, rather than the forceful seizure itself, may then serve as the foundation of the plaintiff's excessive force claim.
>
> This approach mistakenly conflates distinct Fourth Amendment claims. Contrary to this approach, the objective reasonableness analysis must be conducted separately for each search or seizure that is alleged to be unconstitutional. An excessive force claim is a claim that a law enforcement officer carried out an unreasonable seizure through a use of force that was not justified under the relevant circumstances. It is not a claim that an officer used reasonable force after committing a distinct Fourth Amendment violation such as an unreasonable entry.

Id. at 428. Thus, *even if* (1) James had a privacy interest in the home and (2) defendants violated that interest in the manner of their entry,[5] plaintiff cannot then argue that an otherwise reasonable use of force can be the basis of a § 1983 claim under the rejected "provocation theory."

Plaintiff also argues defendants' use of force was not justified because James was not a suspect, there is no evidence she posed any threat to the officers, and because there is no evidence she was resisting or attempting to evade arrest. (Doc. 50, p. 24.) Plaintiff completely ignores the fact that Brown was trying to slaughter the defendants. She also refuses to recognize that Brown was apparently using James as a human shield when he began firing at defendants. Courts have

---

[5] It is unclear to the defense whether plaintiff is suggesting that the use of force can give rise to a § 1983 claim because it violated *James's* reasonable expectation of privacy or *Brown's* reasonable expectation of privacy. Plaintiff lacks "Fourth Amendment 'standing'" to assert this claim because James did not have a reasonable expectation of privacy in Brown's home, for the reasons argued above. To the extent plaintiff attempts to argue that she can assert a Fourth Amendment claim for a violation of Brown's constitutional rights, she lacks Article III standing to bring that claim. See United States v. Ross, 963 F.3d 1056, 1062-66 (11th Cir. 2020) (explaining the difference between merits-based "Fourth Amendment 'standing'" and jurisdictional "Article III standing" with respect to unlawful entry claims). Thus, both theories fail at the outset as a matter of law, and both ultimately fail under the Supreme Court's rejection of the provocation doctrine.

repeatedly held that "a police officer may use deadly force to dispel a threat of serious physical harm to either the officer or others, or to prevent the escape of a suspect who threatens this harm." Davis v. Waller, 44 F.4th 1305, 1313 (11th Cir. 2022). This includes when an officer "has probable cause to believe that his own life is in peril." Id. Had defendants not returned fire at Brown, defendants and the other officers present would have been at mercy of Brown's gunfire and would have certainly faced the threat of serious bodily harm or death. *Even if* plaintiff was a completely innocent victim under the circumstances and she personally did not pose a threat of harm to the officers, the fact remains that she was being held in front of a man who was shooting at the officers. And as the Eleventh Circuit has recognized, there is no case law clearly establishing that officers cannot shoot at an "innocent" victim when they face an imminent threat of harm or death. Id. at 1315 ("To the extent Davis suggests that deadly force may never be used against an innocent victim, we can find no case asserting that proposition so categorically.")

As the Eleventh Circuit illustrated in Davis, the perilous situation facing these defendants is a classic Trolley Problem. Should the officers return fire at Brown and risk harming James, or should they instead throw up their hands and surrender their own lives and those of their fellow officers? While plaintiff would suggest these defendants "had no choice but to let the trolley roll on by," that outcome simply is not required by the Constitution or this Circuit's precedence. See id. at 1315, n.5 ("We disagree.").[6]

And, once again, plaintiff has not pointed to a single case clearly establishing that officers violate the Fourt Amendment when they use lethal force under the circumstances facing them here:

---

[6] The Eleventh Circuit disagrees, and so does plaintiff's own expert, who opined it would be reasonable for the officers to return fire at Brown. (Doc. 39-2, p. 5, ¶ 15.)

a man holding a supposedly innocent person is actively firing upon the officers. As the Supreme Court has frequently stated, prior case law must be "particularized" to the facts of the case:

> In the last five years, this Court has issued a number of opinions reversing federal courts in qualified immunity cases. The Court has found this necessary both because qualified immunity is important to "'society as a whole,'" and because as "'an immunity from suit,'" qualified immunity "'is effectively lost if a case is erroneously permitted to go to trial.'"
>
> Today, it is again necessary to reiterate the longstanding principle that "clearly established law" should not be defined "at a high level of generality." As this Court explained decades ago, the clearly established law must be "particularized" to the facts of the case. Otherwise, "[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights."

White v. Pauly, 137 S. Ct. 548, 551–52 (2017). The Court recently reiterated again:

> Although "this Court's case law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." **"[S]pecificity is especially important in the Fourth Amendment context, where ... it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts**."

Rivas-Villegas v. Cortesluna, 142 S. Ct. 4, 7–8 (2021) (citations omitted).

Plaintiff has failed to show clearly established law with the requisite level of specificity. Therefore, defendants remain entitled to qualified immunity as to plaintiff's excessive force claim.

### III.   CONCLUSION

For the reasons set forth above and in their moving brief, defendants respectfully request that this Court grant their motion for summary judgment as to all of plaintiff's remaining claims.

This 11th day of January, 2024.

Respectfully submitted,

**FREEMAN MATHIS & GARY, LLP**

*/s/ Steven L. Grunberg*
Sun S. Choy
Georgia Bar No. 025148
schoy@fmglaw.com
Wesley C. Jackson
Georgia Bar No. 336891
wjackson@fmglaw.com
Steven Grunberg
Georgia Bar No. 146397
sgrunberg@fmglaw.com

*Attorneys for Defendants*

100 Galleria Parkway
Suite 1600
Atlanta, GA  30339-5948
(770) 818-0000 (Telephone)
(770) 937-9960 (Facsimile)

- 15 -

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day electronically submitted the foregoing **DEFENDANTS MICHAEL BLAQUIERE AND DOWNY CASEY'S REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** to the Clerk of Court using the CM/ECF system which will automatically send electronic mail notification of such filing to counsel of record who are CM/ECF participants. Counsel of record are:

| | |
|---|---|
| Reginald A. Greene, Esq.<br>GREENE LEGAL GROUP LLC<br>One Georgia Center, Suite 605<br>600 West Peachtree Steet, NW<br>Atlanta, Georgia 30308<br>rgreene@greenlegalgroup.com | Mario A. Pacella, Esq.<br>STROM LAW FIRM, LLC<br>600 West Peachtree Steet, Suite 604<br>Atlanta, Georgia 30308<br>mpacella@stromlaw.com |
| Bakari T. Sellers, Esq.<br>STROM LAW FIRM, LLC<br>6923 N. Trenholm Road, Suite 200<br>Columbia, South Carolina 29206<br>bsellers@stromlaw.com | Harry M. Daniels, Esq.<br>THE LAW OFFICES OF HARRY M. DANIELS, LLC<br>4751 Best Road, Suite 490<br>Atlanta, Georgia 30337<br>daniels@harrymdaniels.com |

This 11th day of January, 2024.

*/s/ Steven L. Grunberg*
Steven Grunberg
Georgia Bar No. 146397
sgrunberg@fmglaw.com

*Attorneys for Defendants*

FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway
 Suite 1600
Atlanta, Georgia 30339-5948
T:  (770) 818-0000
F:  (770) 937-9960